IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-cv-483

| | | |
|---|---|---|
| RE CARROLL MANAGEMENT COMPANY; CIP CONSTRUCTION COMPANY; CARROLL INDUSTRIAL DEVELOPMENT US, LLC; ALARIS HOMES, INC.; SNAP PUBLICATIONS, LLC; and CARROLL INVESTMENT PROPERTIES, INC., | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **COMPLAINT** |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| DUN & BRADSTREET, INC.; DUN & BRADSTREET HOLDINGS, INC.; and THE DUN & BRADSTREET CORPORATION, | ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiffs, complaining of the defendants, allege and say as follows:

## <u>NATURE OF THE ACTION</u>

1.     This is a civil action in which plaintiffs assert claims against defendants for appropriation of names, libel *per se*, libel *per quod*, unfair and deceptive trade practices, and violation of the North Carolina Racketeer Influenced and Corrupt Organizations Act.[1] Plaintiffs are also seeking injunctive relief.

---

[1] Some of the alleged actions of defendants in the instant matter bear similarity to actions alleged by the Federal Trade Commission ("FTC") against defendant Dun & Bradstreet, Inc. in a recent enforcement action brought by the FTC, *FTC File No. 1723196.*

## THE PARTIES

2.      Plaintiff RE Carroll Management Company is a corporation organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  Plaintiff RE Carroll Management Company is a citizen of North Carolina for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

3.      Plaintiff CIP Construction Company is a corporation organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  Plaintiff CIP Construction Company is a citizen of North Carolina for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

4.      Plaintiff Carroll Industrial Development US, LLC is a limited liability company organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  None of the members of plaintiff Carroll Industrial Development US, LLC are citizens of Delaware, and said plaintiff is a citizen of North Carolina for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

5.      Plaintiff Alaris Homes, Inc. is a corporation organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina. Plaintiff Alaris Homes, Inc. is a citizen of North Carolina for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

6.      Plaintiff Snap Publications, LLC is a limited liability company organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  None of the members of plaintiff Snap Publications, LLC are

Case 1:23-cv-00483   Document 1   Filed 06/16/23   Page 2 of 31

citizens of Delaware, and said plaintiff is a citizen of North Carolina for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

7.     Plaintiff Carroll Investment Properties, Inc. is a corporation organized and existing under the laws of North Carolina with its principal place of business in Greensboro, North Carolina.  Plaintiff Carroll Investment Properties, Inc. is a citizen of North Carolina for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

8.     The above described plaintiffs (collectively, "Plaintiffs") are part of a larger group of affiliated entities collectively referred to as "The Carroll Companies."

9.     The Carroll Companies is the brand name for the more than 200 affiliated entities, including Plaintiffs, which share common ownership and management.

10.     The Carroll Companies is not a business or registered business entity.

11.     Plaintiffs are informed and believe and, thereupon, allege that defendant Dun & Bradstreet, Inc. ("Defendant D&B, Inc.") is a corporation organized and existing under the laws of Delaware but regularly conducts business in North Carolina and is engaged in substantial activity within North Carolina, including within Guilford County, North Carolina.  Defendant D&B, Inc. is a citizen of Delaware for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

12.     Plaintiffs are informed and believe and, thereupon, allege that defendant Dun & Bradstreet Holdings, Inc. ("Defendant D&B Holdings") is a corporation organized and existing under the laws of Delaware but regularly conducts business in North Carolina and is engaged in substantial activity within North Carolina, including within Guilford County,

North Carolina. Defendant D&B Holdings is a citizen of Delaware for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

13. Plaintiffs are informed and believe and, thereupon, allege that defendant The Dun & Bradstreet Corporation ("Defendant D&B Corporation") is a corporation organized and existing under the laws of Delaware but regularly conducts business in North Carolina and is engaged in substantial activity within North Carolina, including within Guilford County, North Carolina. Defendant D&B Corporation is a citizen of Delaware for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332.

14. Upon information and belief, Defendant D&B, Inc., Defendant D&B Holdings, and Defendant D&B Corporation are, and at all relevant times for purposes of this Complaint have been, associated companies with common ownership, officers, and/or directors, all of whom operate under the name "Dun & Bradstreet." At all times relevant to this action, as between Defendant D&B, Inc., Defendant D&B Holdings, and Defendant D&B Corporation, it was unclear to Plaintiffs which Dun & Bradstreet entity was responsible for creating and publishing the information regarding Plaintiffs and The Carroll Companies described hereinbelow. Accordingly, Defendant D&B, Inc., Defendant D&B Holdings, and Defendant D&B Corporation shall hereinafter collectively be referred to as the "Defendant."

## JURISDICTION AND VENUE

15. The allegations in paragraphs 1 through 14 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

4

16.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332. Plaintiffs and Defendant are citizens of different states.  Upon information and belief, the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

17.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims described herein occurred in the Middle District of North Carolina.

18.    This Court has personal jurisdiction over Defendant pursuant to N.C. Gen. Stat. § 1-75.4.

## FACTS

19.    The allegations in paragraphs 1 through 18 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

20.    Defendant created and maintains an online business directory service in which Defendant provides purported profiles of various companies to businesses, financial institutions, government entities, and the general public.

21.    Defendant created the profiles of the companies that Defendant included in its online business directory service.

22.    In connection with its profiles of companies described hereinabove, Defendant also provides purported "business credit reports" of companies it profiles. In these business credit reports, Defendant provides summaries of the "overall business risks" which Defendant associates with these companies.  Defendant also provides "viability

5

ratings," "failure scores," "delinquency scores," and "maximum credit recommendations" for these companies in said business credit reports.

23.     Plaintiffs are privately held companies and have never disclosed details of their finances, payment histories, credit histories, business relationships and dealings, or other background information to Defendant.

24.     Defendant has no actual knowledge of the financial strength, financial conditions and credit histories of Plaintiffs or the risks of doing business with Plaintiffs.

25.     Nevertheless, Defendant created profiles of Plaintiffs and The Carroll Companies ("TCC") which Defendant included in Defendant's online business directory service, and Defendant has made these profiles available to businesses, financial institutions, and the general public.

26.     Importantly, Defendant does not disclose in these profiles that Defendant lacks access to the information and documentation that would allow Defendant to accurately profile Plaintiffs and TCC.

27.     Rather, Defendant represents these profiles of Plaintiffs and TCC as accurate, and promotes and intends for businesses, financial institutions, and the general public to rely on them as such.

28.     In connection with the profiles of Plaintiffs and TCC which Defendant created and placed in Defendant's online business directory service as described hereinabove, Defendant also created and provided purported "business credit reports" of plaintiffs RE Carroll Management Company, Carroll Industrial Development US, LLC,

6

Alaris Homes, Inc., Snap Publications, LLC, Carroll Investment Properties, Inc. Defendant also created and placed in Defendant's online business directory service a purported business credit report of "Carroll Companies, The, Tradestyle(s): CIP Construction."

29.     In the purported business credit reports of Plaintiffs and TCC described herein, Defendant provided and continues to provide summaries of the "overall business risk" which Defendant associates with each of the Plaintiffs in said reports. Further, in these purported business credit reports, Defendant included and continues to include "viability ratings," "failure scores," "delinquency scores," and "maximum credit recommendations" which Defendant associates with each of the Plaintiffs in said reports. These purported business credit reports are accessible to businesses, financial institutions, government entities, and the general public through Defendant's subscription-based services associated with Defendant's online business directory service described hereinabove, and the information contained therein has been and continues to be published by Defendant throughout the United States, Europe, and countries and markets throughout the world through the network that is Defendant's online business directory service.

30.     Defendant's online business directory service is designed so that businesses, financial institutions, government entities, and members of the general public can access profiles of companies by inserting or clicking on companies' names in Defendant's online business directory service. Defendant included Plaintiffs' and TCC's names in its online business directory service so that businesses, financial institutions, government entities, and members of the general public would have a way in which to navigate to the profiles

7

of Plaintiffs and TCC, view the information which Defendant created regarding Plaintiffs and TCC, and view the purported business credit reports that Defendant created regarding Plaintiffs and TCC.

31. Plaintiffs did not ask Defendant to create profiles of Plaintiffs and TCC to be included in Defendant's online business directory service, nor did Plaintiffs consent to Defendant's creation of profiles of Plaintiffs and TCC to be included in Defendant's online business directory service.

32. Plaintiffs did not ask Defendant to use Plaintiffs' and TCC's names in Defendant's online business directory service, nor did Plaintiffs consent to Defendant's use of Plaintiffs' and TCCs' names in Defendant's online business directory service.

33. Plaintiffs did not ask Defendant to create purported business credit reports of Plaintiffs and TCC, nor did Plaintiffs consent to Defendant creating and providing purported business credit reports of Plaintiffs and TCC in Defendant's online business directory service.

34. Defendant markets and promotes Defendant's online business directory service, including Defendant's subscription-based "Data Cloud" service which purportedly provides greater details on the companies that Defendant profiles, to businesses, financial institutions, government entities, and the general public by providing purported business credit reports of companies—including purported business credit reports of Plaintiffs and TCC—to businesses, financial institutions, and the general public. Providing the information described herein to businesses, financial institutions, government entities, and

8

the general public in exchange for fees has been and remains an integral source of revenue for Defendant.

35.     Much of the basic information in Defendant's online business directory service relating to Plaintiffs and TCC is incorrect.  For example, in a profile of TCC—which as noted hereinabove is not an actual business entity and not a named plaintiff in this action—Defendant stated that TCC had revenue of $16.24 million, 3 employees at its principal office, and was started in 2010.  However, if one simply clicks on the link to the website for TCC which is included in Defendant's profile of TCC, TCC's website discloses that "The Carroll Companies" collectively have more than $5 billion in real estate assets, the senior management team associated with the companies comprising "The Carroll Companies" is comprised of 9 employees, and business operations associated with "The Carroll Companies" have been ongoing since 1983.

36.     In the business credit report that Defendant created in connection with Defendant's profile of TCC "Tradestyle(s) CIP Construction" as of June 21, 2022, Defendant provided the following purported risk summaries:  "Overall Business Risk" – "HIGH;" "D&B Viability Rating" – "High Risk;" "Failure Score" – "MODERATE-HIGH;" and "Delinquency Score" – "HIGH."   In said credit report, Defendant also provides the following summary:  "Dun & Bradstreet Thinks…Overall assessment of this organization over the next 12 months: SIGNIFICANT-STABILITY-AND-PAYMENT-BEHAVIOR-CONCERNS; Based on the predicted risk of business discontinuation: HIGHER-THAN-AVERAGE-RISK-OF-DISCONTINUED-OPERATIONS-OR-

9

BUSINESS-INACTIVITY; Based on the predicted risk of severely delinquent payments: VERY HIGH POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS." Further, said credit report states the following: "Maximum Credit Recommendation – US$ 10,000 – The recommended limit is based on a moderately high probability of severe delinquency or business failure" and "Company's risk level is: HIGH." A copy of the said credit report is attached hereto as **Exhibit A** and incorporated herein by reference.[2]

37. In the business credit report that Defendant created in connection with Defendant's profile of plaintiff RE Carroll Management Company as of June 21, 2022, Defendant provided the following purported risk summaries associated with said plaintiff: "Overall Business Risk" – "MODERATE-HIGH;" "D&B Viability Rating" – "High Risk;" "Failure Score" – "MODERATE-HIGH;" and "Delinquency Score" – "MODERATE." In said credit report, Defendant also provides the following summary: "Dun & Bradstreet Thinks…Overall assessment of this organization over the next 12 months: STABILITY CONCERNS; Based on the predicted risk of business discontinuation: HIGHER-THAN-AVERAGE-RISK-OF-DISCONTINUED-OPERATIONS-OR-BUSINESS-INACTIVITY; Based on the predicted risk of severely delinquent payments: MODERATE POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS." Further, said report states the following: "Company's risk level is: HIGH." A copy of the said credit report is attached hereto as **Exhibit B** and incorporated herein by reference.

---

[2] The documents comprising Exhibits A through F each contain two minor redactions.

Case 1:23-cv-00483   Document 1   Filed 06/16/23   Page 10 of 31

38.    In the business credit report that Defendant created in connection with Defendant's profile of plaintiff Carroll Industrial Development US, LLC as of June 21, 2022, Defendant provided the following purported risk summary associated with said plaintiff:  "Failure Score: MODERATE-HIGH."   In said credit report, Defendant also provides the following summary:  "Dun & Bradstreet Thinks…Overall assessment of this organization over the next 12 months: SOME FINANCIAL STRESS CONCERNS; Based on the predicted risk of business discontinuation: MODERATELY-HIGHER-THAN-AVERAGE-RISK-OF-FINANCIAL-STRESS; Based on the predicted risk of severely delinquent payments: MODERATE POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS."    Further, said credit report states the following:   "Maximum Credit Recommendation – US$ 5,000 – The recommended limit is based on a moderate probability of severe delinquency."  A copy of the said credit report is attached hereto as **Exhibit C** and incorporated herein by reference.

39.    In the business credit report that Defendant created in connection with Defendant's profile of plaintiff Alaris Homes, Inc. as of June 21, 2022, Defendant provided the following purported risk summary associated with said plaintiff: "Failure Score: MODERATE."   Further, said credit report states the following:   "Maximum Credit Recommendation – US$ 9,000."  A copy of the said credit report is attached hereto as **Exhibit D** and incorporated herein by reference.

40.    In the business credit report that Defendant created in connection with Defendant's profile of plaintiff Snap Publications, LLC as of June 21, 2022, Defendant

provided the following purported risk summaries associated with said plaintiff: "Overall Business Risk" – "MODERATE-HIGH;" "D&B Viability Rating" – "High Risk;" "Failure Score" – "MODERATE;" and "Delinquency Score" – "MODERATE." In said credit report, Defendant also provides the following summary: "Dun & Bradstreet Thinks…Overall assessment of this organization over the next 12 months: STABILITY CONCERNS; Based on the predicted risk of business discontinuation: HIGHER-THAN-AVERAGE-RISK-OF-DISCONTINUED-OPERATIONS-OR-BUSINESS-INACTIVITY; Based on the predicted risk of severely delinquent payments: MODERATE POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS." Further, said report states the following: "Company's risk level is: HIGH." A copy of the said credit report is attached hereto as **Exhibit E** and incorporated herein by reference.

41. In the business credit report that Defendant created in connection with Defendant's profile of plaintiff Carroll Investment Properties, Inc. as of June 21, 2022, Defendant provided the following purported risk summaries associated with said plaintiff: "Overall Business Risk" – "MODERATE-HIGH;" "D&B Viability Rating" – "High Risk;" "Failure Score" – "MODERATE-HIGH;" and "Delinquency Score" – "MODERATE." In said credit report, Defendant also provides the following summary: "Dun & Bradstreet Thinks…Overall assessment of this organization over the next 12 months: STABILITY CONCERNS; Based on the predicted risk of business discontinuation: HIGHER-THAN-AVERAGE-RISK-OF-DISCONTINUED-OPERATIONS-OR-BUSINESS-INACTIVITY; Based on the predicted risk of severely delinquent payments: MODERATE

POTENTIAL FOR SEVERELY DELINQUENT PAYMENTS."   Further, said report states the following:  "Company's risk level is: HIGH."  A copy of the said credit report is attached hereto as **Exhibit F** and incorporated herein by reference.

42.    Defendant has continued to create variations of the above described business credit reports of Plaintiffs and TCC, and the information contained therein has been and continues to be published by Defendant throughout the United States, Europe, and countries and markets throughout the world through the network that is Defendant's online business directory service.

43.    Upon information and belief, Defendant, in prior purported business credit reports of TCC and Plaintiffs, has given TCC and each of the Plaintiffs a "D&B Viability Rating" of "High Risk," and has provided other information in said prior purported business credit reports which portrayed TCC and each of the Plaintiffs as credit and business risks.

44.    Importantly, Defendant does not disclose in these purported business credit reports that Defendant lacks access to the information and documentation that would allow Defendant to assess Plaintiffs' overall business risk, viability, potential for failure, delinquency rate, stability, financial strength, financial conditions, and credit histories.

45.    Rather, Defendant represents these purported business credit reports as accurate, represents these purported business credit reports as being based upon verifiable information and documentation, and promotes and intends for businesses, financial institutions, and the general public to rely on them as such.

13

46. Despite Defendant's purported summaries and characterizations of Plaintiffs' and TCC's credit and risk profiles in the prior and current purported business credit reports of Plaintiffs and TCC, Plaintiffs each and all are, and have been, established companies with strong credit histories and solid financials, which promptly satisfy their contractual obligations.

47. Financial institutions and businesses, including lenders and businesses which Plaintiffs have worked with and continue to work with, have reviewed and, upon information and belief, relied upon the prior and current profiles and prior and current purported business credit reports created by Defendant for Plaintiffs and TCC.

48. As described hereinabove, Defendant's prior and current purported business credit reports relating to Plaintiffs are unsupported by facts and have cast, and continue to cast, Plaintiffs in an inaccurate and negative light to Plaintiffs' detriment in Plaintiffs' dealings with Plaintiffs' lenders and other businesses.

49. Defendant's prior and current purported business credit report relating to TCC as described hereinabove are unsupported by facts and have cast, and continue to cast, Plaintiffs, by virtue of their affiliation with TCC, in an inaccurate and negative light to Plaintiffs' detriment in Plaintiffs' dealings with Plaintiffs' lenders and other businesses.

50. Upon information and belief, Defendant never performed any genuine investigations to determine the accuracy of any of the statements in the prior and current purported business reports relating to Plaintiffs and TCC.

14

51.     Defendant's prior and current purported business credit reports relating to Plaintiffs tarnished and continue to tarnish Plaintiffs' reputations.

52.     Because Plaintiffs were and are part of the larger group of affiliated entities collectively referred to as "The Carroll Companies," and were and are identified and associated with the brand name "The Carroll Companies," Defendant's prior and current purported business credit reports relating to TCC as described hereinabove tarnished and continue to tarnish Plaintiffs' reputations.

53.     Plaintiffs contacted Defendant on a number of occasions to notify Defendant that the information in prior profiles and purported business credit reports relating to Plaintiffs and TCC was incorrect.  However, Defendant responded that Defendant would address Plaintiffs' concerns regarding these issues, and improve the business credit report summaries of Plaintiffs, if Plaintiffs would subscribe to Defendant's subscription-based "CreditBuilder Line" products and provide Defendant with Plaintiffs' private, protected information.

54.     Upon information and belief, there was and remains no mechanism associated with Defendant's online business directory service that would allow Plaintiffs to unilaterally correct the information regarding Plaintiffs and TCC in Defendant's online business directory service or opt out of being featured in Defendant's online business directory service.  Plaintiffs' only recourse to correct said information in the past was to subscribe to Defendant's CreditBuilder Line products and provide Defendant with Plaintiffs' private, protected information.

55.     Plaintiffs previously demanded that Defendant immediately cease and desist all reporting on Plaintiffs' finances and creditworthiness, cease making unsupported claims about Plaintiffs' viability, and cease reporting on TCC and making unsupported claims about TCC's viability.  However, Defendant continues to report on Plaintiffs' finances and creditworthiness, continues to make unsupported claims about Plaintiffs' viability, continues to report on TCC's purported finances and creditworthiness, continues to make unsupported claims about TCC's viability, despite the fact that Defendant has notice that Defendant's information on Plaintiffs' finances, creditworthiness, and viability is incorrect, and despite the fact that Defendant has notice that  Defendant's information on TCC is incorrect.

56.     The reporting by Defendant on Plaintiffs as described in the preceding paragraph has cast and continues to cast Plaintiffs in a negative light.

57.     Because Plaintiffs are part of the larger group of affiliated entities collectively referred to as "The Carroll Companies," and are identified and associated with the brand name "The Carroll Companies," the reporting by Defendant on TCC described hereinabove has cast and continues to cast Plaintiffs in a negative light.

58.     Even though Defendant had notice that the purported business credit reports of Plaintiffs and TCC—all of which Defendant created and published—were incorrect and cast Plaintiffs in a negative light, Defendant would not correct this information in Defendant's online business directory service unless Plaintiffs agreed to subscribe to Defendant's CreditBuilder Line products.  Rather, Defendant knowingly continued to

16

publish the purported business credit reports that Defendant affirmatively knew were false and incorrect.

59.     In response to Plaintiffs' most recent demands that Defendant cease and desist all reporting on Plaintiffs and TCC as described hereinabove, Defendant offered Plaintiffs the opportunity to provide Plaintiffs' private, protected information to Defendant for Defendant to review and consider in potentially revising the information regarding Plaintiffs and TCC that currently appears on Defendant's online business directory service. On this particular occasion, Defendant did not require, as a condition to reviewing Plaintiffs' information, that Plaintiffs subscribe to Defendant's services or purchase Defendant's products.  Nevertheless, Defendant did not offer to remove information regarding Plaintiffs and TCC from Defendant's online business directory service and did not offer to cease reporting on Plaintiffs and TCC.

60.     Collectively, the statements created and published by Defendant regarding Plaintiffs and TCC and identified in paragraphs 20 through 59 above shall hereinafter be referred to as the "Statements."

## FIRST CLAIM FOR RELIEF
### (Appropriation of Name)

61.     The allegations in paragraphs 1 through 60 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

62.     Each of Plaintiffs' names have value which Plaintiffs, as registered legal entities, have rights to.

17

63.     TCC as a brand also provides value to Plaintiffs as they are affiliated with, connected to, and are part of the group of TCC.

64.     As noted hereinabove, Defendant, without Plaintiffs' consent, and as part of Defendant's efforts to market and promote Defendant's online business directory service—including Defendant's subscription-based "Data Cloud" service—created and provided to businesses, financial institutions, and the general public profiles of Plaintiffs and TCC, and created and made accessible to businesses, financial institutions, and the general public purported credit reports of Plaintiffs and TCC.  As part of this process, Defendant, without Plaintiffs' consent, used Plaintiffs' names and the brand of TCC in Defendant's online business directory service for the specific purpose of directing businesses, financial institutions, and the general public to the profiles and purported credit reports of Plaintiffs and TCC.

65.     Defendant used and continues to use Plaintiffs' names and the brand of TCC for the purpose of promoting Defendant's services in order to generate revenue for Defendant.

66.     By engaging in the activities described hereinabove, Defendant appropriated Plaintiffs' names and the brand of TCC to and for Defendant's own purpose and commercial advantage.

67.     As a result of Defendant's appropriation of Plaintiffs' names and the brand of TCC, Plaintiffs have suffered actual damages which are a natural and proximate consequence of the actions of Defendant as described herein.

## SECOND CLAIM FOR RELIEF
### (Libel *Per Se*)

68.     The allegations in paragraphs 1 through 67 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

69.     Defendant, by including the Statements in the prior and current purported business credit reports of Plaintiffs and TCC on Defendant's online business directory service, made and continue to make the Statements in a written online publication.

70.     The Statements were and are derogatory to the characters and standings of Plaintiffs in their industries and business communities, and tended to and continue to tend to prejudice Plaintiffs and the brand of TCC in their businesses.

71.     Upon information and belief, Defendant had and has no evidence to support the Statements.

72.     Even though Plaintiffs previously notified Defendant that information in the Statements—created and published by Defendant—was incorrect, Defendant persisted in publishing the Statements, and continues to persist in publishing the Statements, in the purported business credit reports of Plaintiffs and TCC which have been and remain accessible to businesses, financial institutions, government entities, and the general public via Defendant's online business directory service.

73.     The Statements were and are false, defamatory, and of and concerning Plaintiffs and TCC.

74.     Defendant published and continues to publish the Statements to a third party or third parties—businesses, financial institutions, government entities, and the general public—via Defendant's online business directory service.

75.     The Statements were seen and continue to be seen by at least one person, and, upon information and belief, have been and continue to be seen by many people who reviewed and review Plaintiffs' and TCC's profiles and purported business credit reports on Defendant's online business directory service.

76.     The Statements can be reasonably interpreted as stating actual facts about Plaintiffs and TCC.

77.     The Statements were and are intended to convey, did convey and continue to convey, to businesses, financial institutions, and the general public, the impression that there were and are significant risks associated with doing business with Plaintiffs, that Plaintiffs were and are at risk of going out of business, and that there were and are significant risks that Plaintiffs would not and will not be able to fulfil their business obligations.

78.     The Statements were and are defamatory on their face.

79.     After Plaintiffs notified Defendant that the Statements in the prior purported business credit reports were incorrect, Defendant had notice that the Statements were false.

80.     Defendant continued and continues to publish the Statements in the purported business credit reports knowing that the Statements were and are false or with

reckless disregard of whether the Statements were and are false and/or with a high degree of awareness of their falsity.

81.     Defendant has had ample opportunity and time to retract and/or remove the Statements from Defendant's online business directory service.  As a result of the Statements regarding Plaintiffs and TCC, created and published by Defendant, Plaintiffs and the brand of TCC have suffered and continue to suffer damages to Plaintiffs' names and business reputations and to the brand of TCC.

82.     Defendant's Statements were and are libelous per se for the following reasons: (i) they were and are false, (ii) they were and are made in a written publication, and (iii) they impeached and continue to impeach Plaintiffs and TCC in their businesses.

83.     Because Defendant knew that Plaintiffs were private companies that did not report their revenues publicly, because Defendant had notice from Plaintiffs that the Statements in the prior purported business credit reports were false, defamatory, and impeached Plaintiffs in their businesses, because Defendant's prior profiles and purported business credit reports of Plaintiffs and TCC did not contain caveats or warnings that the information in the Statements was possibly inaccurate or incomplete, and because Defendant nevertheless persisted in publishing the Statements in the prior purported business credit reports without changing any of the information therein unless Plaintiff agreed to subscribe to Defendant's CreditBuilder Line products and provide Defendant with Plaintiffs' private information, Defendant's Statements that were published in the

Case 1:23-cv-00483   Document 1   Filed 06/16/23   Page 21 of 31

prior purported business credit reports were in bad faith, for no good purpose, governed by bad motives, and, accordingly, were made with actual malice.

84.     As a direct result and natural consequence of the Statements which Defendant created and published, and continues to publish, Plaintiffs have suffered and will continue to suffer damages to Plaintiffs' names, businesses and business reputations and to the brand of TCC.

### THIRD CLAIM FOR RELIEF
(Libel *Per Quod*)

85.     The allegations in paragraphs 1 through 84 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

86.     Defendant published and continues to publish false and negative information about Plaintiffs and TCC (*i.e.*, the Statements) in business credit reports on Defendant's online business directory.

87.     When considered in connection with innuendo, colloquium, and explanatory circumstances in which the Statements were and continue to be made, the Statements are defamatory to the characters and standings of Plaintiffs and TCC in their industries and business communities.

88.     The innuendo, colloquium, and explanatory circumstances include the information contained in this Complaint and the fact that third-party entities and individuals generally avoid doing business with entities that are designated in widely-published business reports as having: "Overall Business Risk" – "HIGH;" "D&B Viability Rating" – "High Risk;" "Failure Score" – "MODERATE-HIGH;" and other negative credit

reporting described herein. Furthermore, entities with such designations receive less favorable credit terms and lending and business opportunities than those with lower risk designations. Had Plaintiffs' risk designations been accurate (*i.e.*, low risk based on actual information and documentation from Plaintiffs), Plaintiffs would not have sustained the damages identified herein.

89.    Prior to the defamatory publications by Defendant, Plaintiffs and TCC have long enjoyed distinguished reputations in their respective industries and business communities, including strong reputations for their creditworthiness.

90.    However, as a direct and proximate result of Defendant's defamatory publications, Plaintiffs suffered and will continue to suffer significant damages, including, without limitation, costs for repairing Plaintiffs' damaged reputations, future lost profits and business opportunities, less favorable terms from lenders, and goodwill. Plaintiffs are entitled to recover these actual, compensatory, and special damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices)

91.    The allegations in paragraphs 1 through 90 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

92.    As noted hereinabove, Defendant markets and promotes Defendant's online business directory service—including Defendant's subscription-based "Data Cloud" service—by providing profiles of various companies, including profiles of Plaintiffs and TCC, to businesses, financial institutions, and the general public, and by providing

23

purported business credit reports of companies, including purported business credit reports of Plaintiffs and TCC, to businesses, financial institutions, and the general public.

93. As noted hereinabove, after Plaintiffs previously contacted Defendant to notify Defendant that the profiles of Plaintiffs and TCC were incorrect, and that the Statements in the prior purported business credit reports were incorrect, Defendant did not correct or remove the profiles and Statements but, instead, informed Plaintiffs that Defendant would address Plaintiffs' concerns regarding the profiles and Statements, and improve the business credit report summaries of Plaintiffs and TCC, if Plaintiffs would subscribe to Defendant's CreditBuilder Line products and provide Defendant with Plaintiffs' private, protected information.

94. Defendant, by refusing to correct or remove the information in the profiles and the Statements as described herein—information which Defendant created and knew was incorrect and derogatory to Plaintiffs—unless Plaintiffs subscribed to Defendant's CreditBuilder Line products and provided Defendant with Plaintiffs' private, protected information, engaged in actions that were unfair and oppressive to Plaintiffs.

95. Defendant, upon information and belief, intended to use the private, protected information of Plaintiffs for Defendant's own commercial purposes and benefit.

96. By engaging in the actions described herein, Defendant engaged in unfair acts and practices prohibited by N.C. Gen. Stat. § 75-1.1.

97. Defendant's actions with respect to Plaintiffs as described hereinabove, including creating the profiles and purported business credit reports relating to Plaintiffs

and TCC, making the information contained therein accessible to businesses, financial institutions, and the general public in exchange for subscription fees, and refusing to correct or remove the Statements in the profiles and purported business credit reports unless Plaintiffs subscribed to Defendant's CreditBuilder Line products and provided Plaintiffs' private, protected information to Defendants, were in or affecting commerce.

98.     Defendant's actions with respect to Plaintiffs as described hereinabove have proximately caused injury to Plaintiffs and to the brand of TCC.

99.     Plaintiffs are entitled to treble damages and their attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1; in the alternative, Plaintiffs are entitled to recover punitive damages from Defendant pursuant to Chapter 1D of the North Carolina General Statutes and at common law.

**FIFTH CLAIM FOR RELIEF**
**(Violation of North Carolina Racketeer Influenced and Corrupt Organizations Act)**

100.    The allegations in paragraphs 1 through 99 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

101.    This cause of action arises under the provisions of Chapter 75D of the North Carolina General Statutes, which is referred to as the North Carolina Racketeer Influenced and Corrupt Organizations Act, and is based upon a pattern of racketeering activity by Defendant in connection with Defendant's far-reaching scheme to publish reports containing false information then leverage, threaten, and extort businesses into purchasing Defendant's purported credit-repair software, which constitutes a violation of N.C. Gen. Stat. § 14-117.

25

102.    Defendant's misconduct in publishing false information about Plaintiffs and TCC was not limited to Plaintiffs and TCC.  Instead, upon information and belief, Defendant has engaged in a pattern of similar misconduct against various other entities by publishing inaccurate information about said entities, and, then, threatening and/or leveraging these entities to purchase various products and services from Defendant, including purported credit-repair services.

103.    In numerous instances, after learning about what they believe to be incomplete or inaccurate payment-related information and/or inaccurate scores and ratings appearing on their credit reports with Defendant, affected businesses, including Plaintiffs, have complained.  Upon information and belief, Defendant routinely offered these affected businesses its CreditBuilder Line product as a way to improve their reports.  Upon further information and belief, Defendant's employees and/or representatives have routinely told such affected businesses that purchasing a CreditBuilder Line product is the only way to improve their credit reports with Defendant.

104.    Similarly, on multiple occasions, Plaintiffs contacted Defendant to notify Defendant that the information in prior profiles and purported business credit reports was incorrect.  Defendant's response each time, with the exception of most recent notifications described in paragraph 59 above, has been that Plaintiffs can only repair their business credit report summaries if Plaintiffs subscribe to Defendant's CreditBuilder Line products and provide Defendant with Plaintiffs' private, protected information.

105.    Defendant's scheme described herein amounts to a form of extortion, in that Defendant informs businesses that they must purchase its products and services or be forced to attempt to survive the negative, and sometimes catastrophic, ramifications of Defendant's inaccurate credit reporting.

106.    Plaintiffs are innocent as to Defendant's scheme because Plaintiffs did not ask nor consent to Defendant's creation of profiles of Plaintiffs to be included in Defendant's online business directory.

107.    Defendant's misconduct, as described herein, constitutes a pattern and practice of racketeering activity, resulting in pecuniary gain for Defendant through receipt of subscription fees for its various services, including its CreditBuilder Line product, based on widespread dissemination of false and inaccurate information about numerous businesses, including Plaintiffs' and TCC's businesses.

108.    Upon information and belief, Defendant engaged and continues to engage in this pattern of racketeering activity.

109.    As a direct and proximate result of the foregoing violations of N.C. Gen. Stat. § 75D-4, Plaintiffs have sustained and will continue to sustain significant injury and damages to their businesses and the brand of TCC, including, without limitation, costs for repairing Plaintiffs' damaged reputations, future lost profits and business opportunities, less favorable credit terms from lenders, and goodwill.

110.    Plaintiffs are entitled to treble damages and their attorney's fees pursuant to N.C. Gen. Stat. § 75D-8(c).

## SIXTH CLAIM FOR RELIEF
### (Preliminary Injunction)

111.    The allegations in paragraphs 1 through 110 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

112.    As noted hereinabove, though Plaintiffs previously demanded that Defendant immediately cease and desist all reporting on Plaintiffs' and TCC's finances and creditworthiness, and cease making unsupported claims about Plaintiffs' and TCC's viability, Defendant has continued to make the Statements in the above described purported business credit reports knowing that the Statements are false or with reckless disregard of whether the Statements are false.

113.    There is probable cause to support Plaintiffs' claims as alleged herein.

114.    The actions of Defendant as alleged hereinabove continue to cause injury to Plaintiffs.

115.    A preliminary injunction is necessary to protect Plaintiffs' rights during the litigation of this case.  Accordingly, Plaintiffs request that, pending the litigation of this case, an order pursuant to Rule 65 of the Federal Rules of Civil Procedure for preliminary injunction be entered requiring Defendant to remove the profiles and purported business credit reports of Plaintiffs and TCC, and all references to Plaintiffs and TCC, from Defendant's online business directory service, or, in the alternative, requiring that Defendant publish caveats in connection with said profiles, purported business credit reports, and references to Plaintiffs and TCC notifying readers that Defendant did not obtain the information contained therein from Plaintiffs, that Plaintiffs did not consent to

28

Defendant's creation and publishing of said information, that Plaintiffs have advised Defendant that said information is incorrect, and that Plaintiffs did not give Defendant permission to use Plaintiffs' and TCC's names.

116.    Plaintiffs are likely to succeed on the merits in the instant case, they are likely to suffer irreparable harm in the absence of the preliminary relief as requested herein, the balance of equities tips in Plaintiffs' favor, and an injunction in favor of Plaintiffs in this matter is in the public interest.

**SEVENTH CLAIM FOR RELIEF**
**(Permanent Injunction)**

117.    The allegations in paragraphs 1 through 116 of this Complaint are realleged and incorporated herein by reference as if fully set forth.

118.    There is probable cause to support Plaintiffs' claims as alleged herein.

119.    The actions of Defendant as alleged hereinabove continue to cause injury to Plaintiffs.

120.    Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a permanent injunction is necessary to protect Plaintiffs' rights after litigation in this case has ended. Accordingly, Plaintiffs request permanent injunctive relief requiring Defendant to remove the profiles and purported business credit reports of Plaintiffs and TCC, and references to Plaintiffs and TCC, from Defendant's online business directory service unless Defendant obtains Plaintiffs' express consent to publish information regarding Plaintiffs and TCC.

**WHEREFORE**, Plaintiffs pray to the Court as follows:

1.      That Plaintiffs each have and recover compensatory damages in excess of Seventy-five Thousand Dollars ($75,000);

2.      That damages be trebled and attorney's fees be awarded as provided by N.C. Gen. Stat. §§ 75-16, 75-16.1, and 75D-8(c);

3.      That Plaintiffs recover punitive damages from Defendant in an amount sufficient to punish and deter Defendant from committing similar acts in the future;

4.      That orders for preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure be granted in Plaintiffs' favor;

5.      That the costs of this action be taxed against Defendant;

6.      For such other and further relief as the Court deems just and proper; and

7.      That, pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs demand a jury trial as to all issues triable by a jury.

This the 16th day of June, 2023.

**[SIGNATURES ON FOLLOWING PAGE]**

/s/ Brooks F. Bossong
Brooks F. Bossong
N.C. State Bar No. 19823
MAYNARD NEXSEN PC
800 Green Valley Road, Suite 500
Post Office Box 3463 (27402)
Greensboro, NC 27408
Telephone: (336) 373-1600
E-mail: bbossong@maynardnexsen.com

Carl H. Petkoff
N.C. State Bar No. 56379
MAYNARD NEXSEN PC
205 King Street, Suite 400
Post Office Box (29402)
Charleston, SC 29401
Telephone: (843) 720-1773
E-mail: cpetkoff@maynardnexsen.com

*Attorneys for Plaintiffs*

31