THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-cv-483

RE CARROLL MANAGEMENT COMPANY;
CIP CONSTRUCTION COMPANY;
CARROLL INDUSTRIAL DEVELOPMENT
US, LLC; ALARIS HOMES, INC.; SNAP
PUBLICATIONS, LLC; and CARROL
INVESTMENT PROPERTIES, INC.,

                Plaintiffs,

v.

DUN & BRADSTREET, INC.; DUN &
BRADSTREET HOLDINGS, INC.: and THE
DUN & BRADSTREET CORPORATION,

                Defendants.

**BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
PURSUANT TO RULE 12(b)(6)**

D&B hereby submits this Memorandum of law in support of its Motion to Dismiss the
Complaint Pursuant to Rule 12(b)(6), filed herewith.

## STATEMENT OF THE CASE

Plaintiffs complain of purportedly false and defamatory credit reporting and company
descriptions in a business directory published by D&B. The gravamen of the case is for
defamation, and Plaintiffs plead claims for libel *per se* and libel *per quod*. They also plead claims
for misappropriation of name, violation of the North Carolina Unfair and Deceptive Trade
Practices Act, N.C.G.S. § 75-1.1 ("UDTPA"), and violation of the North Carolina Racketeer
Influenced Corrupt Organizations Act, N.C.G.S. § 75D-1 *et seq*. ("NC RICO") They seek damages
and injunctions prohibiting D&B from further reporting on them. D&B has moved to dismiss all
of these claims under Rule 12(b)(6).

## STATEMENT OF FACTS

Plaintiffs allege, solely on information and belief, that D&B's business credit reports about them, which they attach as exhibits to the Complaint, are "unsupported by facts." Compl. (Dkt. #1) ¶¶ 48, 71. They claim they are "established companies with strong credit histories and solid financials, which promptly satisfy their contractual obligations," *id.* ¶ 46, and they complain the credit reports cast them in an inaccurate and negative light, *id.* ¶¶ 20-22, 48. Plaintiffs further allege that information that was once in D&B's online business directory, which contains profiles about businesses, was inaccurate. *Id.* ¶¶ 20-21, 35 (describing D&B as having "stated" this information in the past).[1]

Plaintiffs complain that they did not consent to D&B publishing information about their businesses, *id.* ¶¶ 31-33, and they complain that when they contacted D&B to attempt to remedy these alleged defects, they were offered an opportunity to subscribe to a certain service. Plaintiffs contend they were told in the past that subscribing to the service was the only way to improve their credit scores, but that in connection with their most recent complaint, they were not offered that service. *Id.* ¶¶ 53-54, 58-59. Plaintiffs also allege that D&B offered Plaintiffs the opportunity to provide D&B with financial information, without any required subscription, so that their credit rating could be reevaluated, *id.* ¶ 59, but the Complaint is silent about whether they took D&B up on this offer.

Plaintiffs allege no details with respect to damages. Although Plaintiffs state that, "on information and belief," financial institutions and businesses have "relied upon the prior and

---

[1] A search of D&B's online business directory, available at https://www.dnb.com/business-directory.html#CompanyProfilesPageNumber=1&ContactProfilesPageNumber=1&DAndBMark etplacePageNumber=1&IndustryPageNumber=1&SiteContentPageNumber=1&tab=Company%20Profiles, does not reflect the information alleged in the Complaint.

Case 1:23-cv-00483-CCE-JLW   Document 19   Filed 09/18/23   Page 2 of 23

current profiles" of Plaintiffs in the business directory, and on "prior and current purported business credit reports" of them, *id.* ¶ 47, they plead no specific damages—just generalized types of injury. *See id.* ¶ 67 ("actual damages"), *id.* ¶ 84 ("damages to Plaintiffs' names, businesses and business reputations, and to the brand of TCC"), ¶¶ 89, 109 ("costs for repairing Plaintiffs' damaged reputations, future lost profits and business opportunities, less favorable terms from lenders, and goodwill"), ¶ 98 ("injury to Plaintiffs and to the brand of TCC").

## QUESTION PRESENTED

Should Plaintiffs' claims be dismissed pursuant to Rule 12(b)(6) because they fail to state a claim for relief as a matter of law?

## STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A plaintiff must plead facts sufficient to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" and a complaint will not survive where it contains "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Dismissal must be granted where a "complaint's factual allegations" fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683).

Case 1:23-cv-00483-CCE-JLW   Document 19   Filed 09/18/23   Page 3 of 23

**ARGUMENT**

Plaintiffs do not state a claim on which relief can be granted. The heart of Plaintiffs' case is for libel. Their libel *per se* and *per quod* claims arising from D&B's credit reports both fail because those reports are constitutionally protected statements of opinion. Plaintiffs' libel *per quod* claim fails for the additional reason that they failed to plead special damages. And because Plaintiffs' libel claim arising from D&B's business directory could *only* survive as a libel *per quod* claim, it, too, must be dismissed.

The remainder of Plaintiffs' claims, with the exception of the misappropriation of name claim, are "tagalong" claims to the defamation claims and must be dismissed along with those claims.

Finally, all of the remaining claims (including the misappropriation of name claim) fail on their merits as well.

I. **Plaintiffs' libel claim based on D&B's credit reports must be dismissed because those credit reports are D&B's constitutionally protected statements of opinion.**

Plaintiffs' libel claim arising from D&B's credit reports must be dismissed because these reports are nonactionable statements of opinion. Plaintiffs complain of D&B's description of them as "high" business risks, its expression of "significant stability and payment behavior concerns," and its prediction that there was a "higher than average risk of discontinued operations or business inactivity" over the next 12 months. *See* Compl. ¶¶ 36-41. But these ratings and predictions are "not sufficiently factual to be susceptible of being proved true or false" because each is "a subjective interpretation of multiple objective data points leading to a subjective conclusion." *Aviation Charter, Inc. v. Aviation Research Grp./US*, 416 F.3d 864, 871 (8th Cir. 2005) (affirming dismissal of defamation claims arising from rating by aviation research service).

Plaintiffs allege "on information and belief" that D&B "had and has no evidence to support the statements," Compl. ¶ 71, but this is not plausible—the credit reports attached to the Complaint expressly reflect such evidence, *i.e.*, lawsuits, UCC filings, payment experiences, number of employees, company age, ownership, average high credit, largest high credit, industry trends, etc. Plaintiffs do not challenge *any single aspect* of this factual information; they solely challenge D&B's opinions arising from them. *Id.* ¶¶ 36-41; *see also id.* ¶ 46 (vaguely arguing they have "strong credit histories and financials" and "promptly satisfy their contractual obligations"). Nor do Plaintiffs identify any false and defamatory facts the existence of which was implied by the ratings. *Id.* ¶¶ 36-41. Instead, their claims are based solely upon "predictive opinion[s]" that do not convey provably false statements or implications of fact, and therefore they cannot survive as a matter of federal constitutional law. *See, e.g.*, *Compuware Corp. v. Moody's Investors Servs.*, 499 F.3d 520, 529 (6th Cir. 2007) (affirming dismissal of defamation claim arising from credit rating because rating was "a predictive opinion, dependent on a subjective and discretionary weighing of complex factors" that did not "communicate[] any provably false factual connotation"); *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F.3d 848, 855-56 (10th Cir. 1999) (affirming dismissal of injurious falsehood claim arising from negative bond rating where plaintiff failed "to identify a specific false statement reasonably implied" from "vague" phrases such as "negative outlook"); *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (affirming dismissal of defamation claim arising from negative stock tip in article that "reflect[ed] the writer's subjective and speculative supposition").

Because Plaintiffs failed to plead an actionable false and defamatory statement of fact in D&B's credit reports, their libel claim arising from those reports must be dismissed.

## II. **Plaintiffs' failure to plead special damages with specificity dooms their libel *per quod* claim, including the libel claim arising from the business directory service.**

### A. **To recover for libel *per quod*, a plaintiff must plead special damages, and Plaintiffs failed to do so here.**

Plaintiffs' libel *per quod* claim must be dismissed because Plaintiffs failed to plead special damages with specificity. Special damages must be pleaded and proved where the defendant's statement is not libelous on its face, *i.e.*, where the plaintiff alleges a claim for defamation per quod. *Jolly v. Acad. Collection Serv.*, 400 F. Supp. 2d 851, 863-64 (M.D.N.C. 2005). Special damages are *pecuniary* losses that have actually been incurred, and are not merely anticipated. *Id.* at 863 ("humiliation" not recoverable as special damages); *Araya v. Deep Dive Media, LLC*, 966 F. Supp. 2d 582, 599 (W.D.N.C. 2013) (loss must be pecuniary); *Tallent v. Blake*, 291 S.E.2d 336 (N.C. Ct. App. 1982) ("at least some special damage must have occurred by the time the action is instituted"). These types of losses must be pleaded with specificity. *Jolly*, 400 F. Supp. 2d at 863; *see also TMM Data, LLC v. Braganza*, 2015 U.S. Dist. LEXIS 100386, at *14-15 (E.D.N.C. July 31, 2015) (a libel per quod plaintiff cannot recover presumed damages).

Plaintiffs do not plead facts sufficient to support a claim for special damages. They assert in conclusory fashion that they suffered and will suffer "actual, compensatory, and special damages," including unspecified "costs for repairing Plaintiffs' damaged reputations, future lost profits and business opportunities, less favorable terms from lenders, and goodwill." Compl. ¶ 90. These vague allegations do not sufficiently plead special damages. *See Cole v. Montgomery*, 2023 U.S. Dist. LEXIS 137455, at *20-21 (M.D.N.C. Aug. 8, 2023) (allegations of "damage to [plaintiff's] credit and reputation" insufficient because plaintiff "has not explained how [the Defendant's] alleged statements affected her income"). Plaintiffs' claim for "future lost profits" is also insufficient. *Tallent*, 291 S.E.2d at 340. The Complaint is devoid of any specific allegations regarding how Plaintiffs have been damaged by D&B, and Plaintiffs' libel *per quod* claim must

-6-

therefore be dismissed. *See, e.g.*, *Skinner v. Reynolds*, 764 S.E.2d 652, 658 (N.C. Ct. App. 2014) (unspecified "lost wages" and "expenses of mitigating the defamation" insufficient); *TMM Data*, 2015 U.S. Dist. LEXIS 100386, at *14-15 (dismissal where plaintiff alleged "irreparable harm, substantial financial losses, and damage to its business and reputation, including monetary damages"); *Jolly*, 400 F. Supp. 2d at 863 (dismissal where "damages [were] not listed, enumerated, nor explained in any way, much less as to each plaintiff").

**B.    Plaintiffs' libel claim arising from the alleged false statements in the online business directory fails for this reason.**

Plaintiffs take issue with the revenue and employee and start date data they claim was once in the online business directory about one of them. *See* Compl. ¶ 35. This data is not, on its face, defamatory, and therefore the only way Plaintiffs could recover for such alleged falsehoods is by libel *per quod*. *Renwick v. News & Observer Publ'g Co.*, 312 S.E.2d 405, 408-09 (N.C. 1984) (publication is libelous *per quod* if it is not obviously defamatory but becomes so only when considered with explanatory circumstances). But since the libel *per quod* claim must be dismissed for failure to plead special damages, Plaintiffs cannot recover for libel based on these alleged false statements.[2]

---

[2] They cannot recover for them for an additional reason, as well. This alleged profile is of "The Carroll Companies tradestyle CIP Construction." Compl. ¶ 35. Plaintiffs do not contend the information is false as to CIP Construction, however; they claim it is false as to The Carroll Companies. *Id.* The Complaint repeatedly states that "The Carroll Companies" is not a business entity, and it is not a named plaintiff. As such, the allegedly false statements are not "of and concerning" any plaintiff in this case. *See, e.g.*, *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("We know of no principle of defamation law that permits someone to recover for a defamation *of another* solely because the communication contains an allegedly false implication that the person bringing suit is at risk of loss." (emphasis added)).

## III. Plaintiffs' claims under the UDTPA and NC RICO must be dismissed on the same grounds that the defamation claims must be dismissed.

Plaintiffs cannot sidestep the First Amendment protections of defamation law by recasting a claim for alleged harm to reputation as another tort. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56-57 (1988) (holding that the exacting burden of proof required by the First Amendment prevents plaintiffs from disguising libel claims as ones for "emotional distress"); *accord Compuware*, 499 F.3d at 529-30 (collecting cases and recognizing that plaintiffs cannot, through "creative pleading," avoid First Amendment protections by asserting defamation-based claims as other intentional torts).

Plaintiffs' claims under the UDTPA and NC RICO statute must be dismissed on this ground as they both arise from D&B's allegedly false and defamatory statements. *See Food Lion v. Capital Cities/ABC*, 887 F. Supp. 811, 823-824 (M.D.N.C. 1995) ("Food Lion may not . . . under the guise of some other claim, recover publication damages for injury to its reputation without establishing the defamation requirements of actual malice and falsity."); *Allen v. Beirich*, 2021 U.S. App. LEXIS 20547, at *11, 14, n.5 (4th Cir. Jan. 26, 2021) (dismissing multiple claims pled alongside primary claim for defamation, including RICO); *Netscout Sys. v. Gartner, Inc.*, 223 A.3d 37, 54 (Conn. 2020) (affirming dismissal of unfair trade practices claim based on negative vendor rating that contained "vaguely worded, comparative and evaluative statements" and was thus nonactionable opinion).

## IV. Plaintiffs' non-libel claims also fail on their merits.

### A. Plaintiffs' misappropriation claim fails because Plaintiffs are corporations and because D&B's speech about them is fully protected by the First Amendment.

The North Carolina Supreme Court has recognized a common law cause of action for "the unauthorized use of one's" name or likeness "in connection with an advertisement or other commercial enterprise." *Flake v. Greensboro News Co.*, 195 S.E. 55, 64 (N.C. 1938); *see also*

-8-

*Barr v. S. Bell Tel. & Tel. Co.*, 185 S.E.2d 714, 717 (N.C. 1972). Plaintiffs assert that D&B misappropriated their names by including the companies in D&B's online business directory without their permission. Compl. ¶¶ 61-67. The claim fails as a matter of law.

First, the misappropriation tort is not available to business entities, as the right was "specifically created for real, flesh and blood human persons, not for entities artificially treated as legalistic 'persons.'" 1 J. Thomas McCarthy & Roger E. Schechter, 1 RIGHTS OF PUBLICITY & PRIVACY § 4:41 (2d ed.); *see also* RESTATEMENT (SECOND) OF TORTS § 652I cmt. c ("A corporation, partnership or unincorporated association has no personal right of privacy."); RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 46 cmt. d ("The interest in personal dignity and autonomy that underlies both publicity and privacy rights limits application of the right of publicity to natural persons."); *Myers & Sons Constr. v. Ohl U.S.*, 2022 Cal. Super. LEXIS 41879, at *18 (June 7, 2022) ("[T]he common law right of publicity applies to a natural person"). Any protection a company receives for "the exclusive use of its own name or identity" derives "from the law of unfair competition," RESTATEMENT (SECOND) OF TORTS § 652I cmt. c, and "the rules governing trademarks and trade names," RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 46 cmt. d, rather than misappropriation. North Carolina courts have applied the misappropriation tort in only a handful of reported cases, and all of those involved individual plaintiffs. *See, e.g.*, *Barr*, 185 S.E.2d at 717; *Flake*, 195 S.E. at 64; *Nguyen v. Taylor*, 723 S.E.2d 551, 555 (N.C. Ct. App. 2012). Plaintiffs in this case are all business entities, and for that reason alone, their misappropriation claim should be dismissed.

But even if corporations could properly assert this cause of action, this claim still fails. D&B's use of Plaintiffs' names in its online business directory and related publications is not commercial and therefore falls outside the scope of the misappropriation tort. As Plaintiffs

-9-

acknowledge, the directory contains the names of Plaintiffs and other businesses for the purpose of providing facts and analysis to the public. *See, e.g.*, Compl. ¶¶ 25, 27, 30. North Carolina, consistent with other jurisdictions around the country, recognizes misappropriation only "in connection with an advertisement or other commercial enterprise." *Flake*, 195 S.E. at 64. The requirement has constitutional underpinnings: Expressive speech is entitled to full protection under the First Amendment, while commercial speech receives "lesser protection." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980). Accordingly, the misappropriation tort "is fundamentally constrained by the public and constitutional interest in freedom of expression," and using "a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable." *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 930 (6th Cir. 2003).

Plaintiffs' misappropriation claims therefore fail as they do not survive First Amendment scrutiny. D&B's credit reports provide information to businesses about other businesses' financial health, as Plaintiffs acknowledge. Compl. ¶ 29. Plaintiffs also acknowledge that D&B's business directory "is designed so that businesses, financial institutions, government entities, and members of the general public can access profiles of companies . . . which [D&B] created regarding Plaintiffs and TCC." *Id.* ¶ 30. These business publications are fully protected speech under the First Amendment. *See, e.g.*, *Jefferson Cnty. Sch. Dist. No. R-1*, 175 F.3d at 855-56 (Moody's report about creditworthiness of school district protected by the First Amendment). And courts routinely hold that directories of personal or business information like the D&B directory at issue here are non-commercial in nature and therefore are subject to full First Amendment protection. *See, e.g.*, *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 954 (9th Cir. 2012) (yellow pages); *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 540 (S.D.N.Y. 2018) (lawyer directory); *Vrdolyak v. Avvo, Inc.*,

-10-

206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016) (lawyer directory); *Health Sys. Agency v. Va. State Bd. of Med.*, 424 F. Supp. 267, 273 (E.D. Va. 1976) (physician directory); *Bergen v. Martindale-Hubbell, Inc.*, 285 S.E.2d 6, 7 (Ga. 1981) (lawyer directory).

Apparently in an effort to try to avoid this well-established body of law, Plaintiffs allege that D&B is using their names in the directory "for the purpose of promoting Defendant's services," that is, to "direct[] businesses, financial institutions, and the general public to the profiles and purported credit reports of Plaintiffs and TCC," Compl. ¶¶ 64-65, "in order to generate revenue," *id.* ¶ 65. And they conversely argue that D&B "markets and promotes" its online business directory and its "subscription-based 'Data Cloud' service" by selling its credit reports. *Id.* ¶ 34. But these descriptions do not convert what is protected speech into commercial speech. The mere fact that D&B sells access to the information it publishes, and that it cross markets its products in the hope that subscribers to one publication will then subscribe to another, does not mean that the speech it is selling is commercial speech that is entitled to lesser constitutional protection. D&B is entitled to market and cross-market its First Amendment-protected publications without losing its constitutional protection to publish those publications in the first place. *See, e.g., Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1117 (9th Cir. 2021) ("A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech."); *Exeltis U.S., Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1230 (N.D. Cal. 2021) (database that "provides a service to payors, who rely on the information it contains," is noncommercial); *Vrdolyak*, 206 F. Supp. 3d at 1389 (inclusion of "sponsored listings" does not turn attorney directory into commercial speech); RESTATEMENT (SECOND) OF TORTS § 652C cmt. d ("The fact that the defendant is engaged in the business of publication, for example of a newspaper, out of which he makes or seeks to make a

-11-

profit, is not enough to make the incidental publication a commercial use of the name or likeness."). Because D&B's directory and credit reports do not use Plaintiffs' names solely "in connection with an advertisement" for a product or service, or solely in connection with "[an]other commercial enterprise," *Flake*, 195 S.E. at 64, Plaintiffs' misappropriation claim fails.

**B.** **Plaintiffs' Deceptive Trade Practice Act claim fails because the conduct alleged is not the type of conduct this act was intended to reach.**

North Carolina's UDTPA statute "gives a business a cause of action against another business only where":

> 1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, 2) the businesses are competitors, or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public.

*Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015) (cleaned up), *aff'd*, 674 F. App'x 250 (4th Cir. 2016). Plaintiffs claim in their UDTPA claim that D&B "engaged in actions" that were "in or affecting commerce" that were "unfair and oppressive to Plaintiffs" and that "caused injury to Plaintiffs and to the brand of TCC." Compl. ¶¶ 94, 97. But Plaintiffs fail to allege they *compete* with D&B or have *commercial dealings* with it, or that the complained-of conduct by D&B has a negative effect on *the consuming public*. As such, the UDTPA claim fails as a matter of law and should be dismissed. *See, e.g.*, *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 519 (4th Cir. 1999) ("Although the [UDTPA's] language is quite broad, the Act is not intended to apply to all wrongs in a business setting. The Act's primary purpose is to protect the consuming public." (cleaned up)); *Azima v. Del Rosso*, 2021 U.S. Dist. LEXIS 237463, at *38-39 (M.D.N.C. Aug. 9, 2021) (recommending dismissal of UDTPA claim on these grounds).

**C.** **Plaintiffs fail to state a plausible claim under the North Carolina RICO statute.**

Count five of Plaintiffs' Complaint asserts an alleged violation of the North Carolina Racketeer Influenced and Corrupt Organizations Act, N.C.G.S. § 75D-1 *et seq*. ("NC RICO").

Specifically, Plaintiffs have asserted that: 1) they (and other unidentified businesses) complained to D&B that information regarding their businesses that appeared in credit reports generated by D&B was inaccurate; 2) that in response to those complaints D&B offered the Plaintiffs (and other unidentified businesses) their own subscription credit-building service, and 3) that in some instances, D&B represented that the only way to fix the alleged inaccurate information was to pay D&B for these subscription services while in other instances D&B offered Plaintiffs the opportunity to provide additional information so that D&B could review and consider it in potentially revising the reporting. Compl. ¶¶ 58-59, 100-05. In other words, Plaintiffs are alleging D&B intentionally falsified reports about Plaintiffs' credit and then "extorted" Plaintiffs by attempting to force them to pay for credit-monitoring services to improve the allegedly false credit reporting. *E.g.*, Compl. ¶ 105.

Even accepting these allegations as true, which they are not, Plaintiffs have not and cannot plead a viable claim under the NC RICO statute based on this alleged "extortion scheme," for a few key reasons. For starters, the plain language of the statute is clear that NC RICO does not apply to D&B, a legitimate business operating in the state that has not engaged in a pattern of racketeering activity, and therefore Plaintiffs' claim fails as a matter of law. Furthermore, because Plaintiffs have based their NC RICO claim on alleged fraudulent conduct, their claims are subject to the heightened pleading standard articulated in Fed. R. Civ. P. 9(b). Under that heightened standard, Plaintiffs have not alleged, with sufficient particularity, facts sufficient to support their claims. For these reasons, and as discussed below, Plaintiffs claims under the NC RICO statute fail as a matter of law and must be dismissed.

**1.**      **NC RICO expressly applies only to criminal conduct, not to tortious conduct as is alleged here.**

In enacting its own RICO law, the North Carolina Legislature was responding to a wave of organized crime and was clear that the purpose and intent of the law was to counteract criminal activity:

> (a) the General Assembly finds that a severe problem is posed in this State by the increasing organization among certain unlawful elements and the increasing extent to which organized unlawful activities and funds acquired as a result of organized unlawful activity are being directed to and against the legitimate economy of the State.

> (b) The General Assembly declares that the purpose and intent of this Chapter is: to deter organized unlawful activity by imposing civil equitable sanctions against this subversion of the economy by organized unlawful elements….

N.C.G.S. § 75D-2(a)-(b) ("Findings and intent of General Assembly"). The General Assembly expressly limited the scope of the act to make sure that it was only used to target its intended recipients, *i.e.*, organized *criminal* enterprises, and was not used to accuse legitimate businesses of merely tortious conduct:

> (c) It is not the intent of the General Assembly that this Chapter apply to isolated and unrelated incidents of unlawful conduct but only to an interrelated pattern of organized unlawful activity, the purpose or effect of which is to derive pecuniary gain. *Further, it is not the intent of the General Assembly that legitimate business organizations doing business in this State, having no connection to, or any relationship or involvement with organized unlawful elements, groups or activities* be subject to suit under the provisions of this Chapter.

*Id*. § 75D-2(c) (emphasis added).

The historical context of NC RICO's enactment demonstrates why the Legislature took such great care to articulate the limited scope of the statute. NC RICO was ratified just one year after the United States Supreme Court recognized the civil provisions of federal RICO were "'evolving into something quite different from the original conception of its enactors.'" *Kaplan v. Prolife Action League of Greensboro*, 475 S.E.2d 247, 251 (N.C. Ct. App. 1996) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500 (1985)), *aff'd*, 493 S.E.2d 416 (1997) (per curiam). North

-14-

Carolina did not want its RICO statute to suffer the same fate. Further, prior to the statute's ratification by the General Assembly, the scope of the private right of action provision was substantially limited after hearings conducted by the Senate Judiciary IV Committee. *Id.* (citing MINS. FOR SENATE JUD. IV COMM., 1st session (July 11, 1985).

Given the limited scope of the statute's intended reach, the General Assembly made clear that the statute only be applied to prohibit "*patterns* of racketeering activity," which it defined as at least two instances of racketeering activity, which is considered any attempt to commit, solicit, coerce or intimidate another person to commit an act that would be chargeable as a *crime* under North Carolina law, absent some exceptions. N.C.G.S. § 75D-3(b) & (c) (emphasis added). Put together, and as clarified by the North Carolina Court of Appeals, NC RICO is reserved for organized schemes of criminal illegality for pecuniary gain:

> The plain language of the statute, coupled with the legislative intent, clearly indicates the scope of NC RICO is limited to cases where pecuniary gain is derived from organized unlawful activity prohibited under the statute. Put simply, section 75D-2(c) requires the aggrieved party to establish a causal connection between the alleged pecuniary gain and defendant's activities which allegedly violate section 75D-4.

*Kaplan*, 475 S.E.2d at 251.

The NC RICO statute has no application here. There is certainly no allegation in Plaintiffs' Complaint that D&B is a part of or associated with groups involved in organized crime as contemplated by the statute. Indeed Plaintiffs acknowledge that D&B is in the business of "creating and publishing . . . information," Compl. ¶ 14, and that Dun & Bradstreet, Inc. is a business lawfully incorporated under the state laws of Delaware that regularly conducts business in the state of North Carolina, *id.* ¶ 13.[3] Plaintiffs also acknowledge that D&B is a global publisher of business

---

[3] Plaintiffs have also sued Dun & Bradstreet Holdings, Inc. and The Dun & Bradstreet Corporation, and they make the same allegations about those companies. *Id.* These are holding companies that

information and provider of business decision-making data and analytics. *Id.* ¶¶ 20-22. While Plaintiffs allege that Defendant civilly wronged them, there is no allegation that Defendant's business directory or credit reporting is associated with any criminal enterprise. These allegations, taken as true, are simply not enough to trigger the application of RICO as clearly expressed in the intent of the statute.

2. **Plaintiffs fail to sufficiently plead a pattern of racketeering activity**

Plaintiffs' NC RICO claim also fails because, for two reasons, there is no "pattern of racketeering activity" alleged. First, for an activity to be considered a "Racketeering Activity" under the applicable statute it must be "chargeable by indictment." N.C.G.S. § 75D-3(c)(1) "Under North Carolina law, indictments are criminal pleadings necessary to instigate *felony* charges, not misdemeanor charges. *See* Article I, Section 22, Constitution of the State of North Carolina; N.C.G.S. §§ 15A-627, 7A-271." *State ex rel. Thornburg v. Lot & Bldgs. at 800 Waughtown St.*, 07 N.C. App. 559, 563 (1992) (emphasis added). The only law that Plaintiffs allege was broken in connection with their RICO claim was N.C.G.S. § 14-117, which is a class two *misdemeanor* for fraudulent and deceptive advertising. *See* Compl. ¶ 101. A misdemeanor is not enough.

Second, outside of this one misdemeanor, Plaintiffs' Complaint does not allege any other acts which can be considered racketeering activity under the statute, and therefore, even accepting Plaintiffs' allegations as true, they have not alleged a "pattern" of racketeering activity. *See Orndorff v. Raley*, 2018 U.S. Dist. LEXIS 182149, at *13-18 (W.D.N.C. Oct. 24, 2018) (dismissing an NC RICO claim on the grounds that the plaintiff failed to allege two separate actions of "racketeering activity").

---

do no business in North Carolina, however, and they have separately moved for dismissal under F.R.C.P. 12(b)(2).

-16-

The *Orndorff* decision is particularly instructive here. There the aggrieved party filed a six-count complaint which included claims for defamation, false and deceptive trade practices, fraud, and a claim under NC RICO. *Id* at *6-7. In evaluating the NC RICO claim, the court acknowledged that the plaintiff did assert one criminal statute that was violated, but also noted that the only other alleged "unlawful conduct" was the civil claims of defamation and unfair trade practices. *Id*. at *15-17. Since NC RICO only applies to a "pattern of racketeering activity," meaning two or more criminal acts, the plaintiff had not sufficiently pled a NC RICO claim as only one potential racketeering act was alleged. *Id*. In reaching that conclusion, the Court clarified that defamation and other similar torts were plainly not covered under the statute's definition of "racketeering activity." *Id*. at *16.

Just like in *Orndorff*, Plaintiffs have only asserted one potential racketeering activity, *i.e.*, the alleged fraudulent advertising claim. Even accepting that allegation as true, Plaintiffs' Complaint fails to assert any other activity that would trigger the NC RICO statute. As such, Plaintiffs have not pled a "pattern of racketeering activity," and their complaint fails as a matter of law.[4]

### 3. Plaintiffs fail to sufficiently plead facts with particularity as required by Rule 9(b) to sustain their claims under the NC RICO statute.

Plaintiffs' claim of racketeering activity is premised upon an alleged violation of N.C.G.S. § 14-117. Chapter 14 of the North Carolina General Statutes is entitled "Criminal Law." Article 20

---

[4] *Orndorff* is not an isolated decision. Courts interpreting NC RICO regularly dismiss complaints that fall outside the scope of the intended purpose of the statute, or those that do not assert sufficient "racketeering activity" to trigger the statute. *See, e.g.*, *Lee v. Moore*, 2016 N.C. App. LEXIS 1135, at *13 (Nov. 15, 2016); *Tucker v. Clerk of Ct. of Forsyth Cnty. ex rel. Frye*, 2019 N.C. App. LEXIS 866, at *14-16 (Oct. 15, 2019); *Se. Anesthesiology Consultants, PLLC v. Rose*, 2019 NCBC LEXIS 63, at *39 (N.C. Super. Ct. Oct. 10, 2019); *Southwood v. Credit Card Sol.*, 2012 U.S. Dist. LEXIS 152146, at *44-45 (E.D.N.C. Oct. 23, 2012).

of Chapter 14, which contains N.C.G.S. § 14-117, is entitled "Frauds." N.C.G.S. § 14-117 is entitled "Fraudulent and deceptive advertising."

Ordinarily, a litigant asserting a claim under the NC RICO statute is required to plead the following factors:

> (1) an innocent person must allege (2) an injury or damage to his business or property (3) by reason of two or more acts of organized unlawful activity or conduct, (4) one of which is something other than mail fraud, wire fraud, or fraud in the sale of securities, (5) that resulted in pecuniary gain to the defendants.

*Gilmore v. Gilmore*, 748 S.E.2d 42, 49 (N.C. Ct. App. 2013) (cleaned up). However, since Plaintiffs' NC RICO claim against D&B is premised on "fraudulent" advertising, their claims are subject to the heightened pleading standards under Rule 9(b). *See Tucker*, 2019 N.C. App. LEXIS 866, at *10-12.

Both the Federal Rule 9(b) and its North Carolina state analogue rule 9(b) require fraud claims to be pled "with particularity." Fed. R. Civ. P. 9(b); *see also* N.C.G.S. § 1A-1, 9. As the Fourth Circuit has explained, the purpose of Rule 9(b)'s particularity requirement is to

> [e]nsure that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of…Rule 9(b) exists to protect the defendant from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 784 (4th Cir. 1999).[5]

This particularity requirement has often been labeled as requiring the plaintiff to identify the: "who, what, when, where, and how" the alleged fraud was conducted. *Topshelf Mgmt., Inc. v. Campbell-Ewald Co*., 117 F. Supp. 3d 722, 725 (M.D.N.C. 2015).

---

[5] North Carolina courts look to federal case law interpreting the federal RICO statute when analyzing the NC RICO statute. *See Gilmore*, 748 S.E.2d at 49 n.2; *Kaplan*, 475 S.E.2d at 254.

-18-

Applying that heightened standard to the allegations set forth in Plaintiffs' NC RICO claim, the Complaint does not come close to meeting the particularity requirement of Rule 9(b). First, Plaintiffs' entire RICO claim appears to be premised purely on its unspecified "information and belief," that D&B has engaged in a "pattern of similar misconduct" as Plaintiffs alleged throughout its complaint. *See* Compl. ¶¶ 102, 103, 107. Notably, no such other conduct is identified in the Complaint. Rather, Plaintiffs' have speculated that D&B must be "extorting" other businesses because they believe it happened to them, yet they have not identified a single additional entity which purportedly has been subjected to the alleged "scheme."

Moreover, Plaintiffs have not sufficiently pled with particularity the "who, what, where, when and why" required to demonstrate sufficient allegations of fraud. Plaintiffs' RICO claim is premised on alleged violations of N.C.G.S. § 14-117, titled "Fraudulent and deceptive advertising," but other than citing the statute, Plaintiffs' Complaint lacks any particularity about what advertisements were made, what was specifically said in any advertisement or what was specifically false or deceptive about those advertisements. Instead, Plaintiffs' Complaint is solely comprised of conclusory allegations that Defendants had a "scheme" to extort businesses based on unspecified "information and belief" of the Plaintiffs. This is precisely the type of undeveloped and frivolous claim that Rule 9(b) was designed to prevent.

### D. The Injunctive Relief Sought by Plaintiffs Would Be Unconstitutional Prior Restraints on Speech Protected by the First Amendment.

Plaintiffs' claims for preliminary and permanent injunctions, *see* Compl. ¶¶ 111-120, should be dismissed because "a request for injunctive relief is not a cause of action but rather a type of remedy." *Barnhill v. FirstPoint, Inc.*, 2017 U.S. Dist. LEXIS 74979, at *23 (M.D.N.C. May 17, 2017); *see also, e.g.*, *Doe v. Lees-McRae Coll.*, 2021 U.S. Dist. LEXIS 120599, at *11 (W.D.N.C. June 29, 2021).

-19-

In any event, an injunction requiring the removal of Plaintiffs' profiles from D&B's credit reports and free directory, as Plaintiffs request, Compl. ¶¶ 115, 120, would impose a prior restraint on speech in violation of the First Amendment. *See, e.g.*, *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) (explaining there is "'a heavy presumption against [the] constitutional validity'" of any injunction aimed at preventing speech); *Sindi v. El-Moslimany*, 896 F.3d 1, 30-35 (1st Cir. 2018) (vacating post-trial injunction barring defendants from re-publishing defamatory statements). Likewise, Plaintiffs' alternative request that the Court require D&B to publish various "caveats" in connection with its statements about them, Compl. ¶ 115, would violate the First Amendment's prohibition on compelled speech. *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (First Amendment does not permit "intrusion into the function of editors" through compelled publication of information).

## CONCLUSION

For all of the foregoing reasons, this Court should dismiss, pursuant to Rule 12(b)(6), Plaintiffs' Amended Complaint in its entirety.


This the 18th day of September, 2023.


OFFIT KURMAN, P.A.


By: */s/ Robert B. McNeill*
    Robert B McNeill/State Bar No. 13038
    *Attorney for Defendants*
    301 South College Street, Suite 2600
    Charlotte, N.C. 28202-6006
    Telephone: 704/377-2500
    Facsimile: 704/372-2619
    E-mail: Robert.McNeill@offitkurman.com

BALLARD SPAHR LLP

-20-

By: */s/ Ashley I. Kissinger*

Ashley I. Kissinger  (*pro hac vice* forthcoming)
*Attorney for Defendants*
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Telephone:   303/376-2407
Facsimile:   303/296-3956
E-mail:  kissingera@ballardspahr.com

## Local Rule 7.3 Certification

I hereby certify that the foregoing brief complies with Local Rule 7.3(d)(1) in that it contains less than 6,250 words. In making this certification, I have relied on the word count of the Microsoft Word software as required by Rule 7.3(d)(1).

This the 18th day of September, 2023.

OFFIT KURMAN, P.A.

By: */s/ Robert B. McNeill*
    Robert B McNeill/State Bar No. 13038
    *Attorney for Defendants*
    301 South College Street, Suite 2600
    Charlotte, N.C. 28202-6006
    Telephone: 704/377-2500
    Facsimile: 704/372-2619
    E-mail: Robert.McNeill@offitkurman.com

BALLARD SPAHR LLP

By: */s/ Ashley I. Kissinger*
    Ashley I. Kissinger (*pro hac vice* forthcoming)
    *Attorney for Defendants*
    1225 17th Street, Suite 2300
    Denver, CO 80202-5596
    Telephone: 303/376-2407
    Facsimile: 303/296-3956
    E-mail: kissingera@ballardspahr.com

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the foregoing Brief in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6) was served upon the following counsel by the CM/ECF electronic filing system as follows:

> Brooks Freeman Bossong
> *Attorney for Plaintiffs*
> Maynard Nexsen, PC
> 800 Green Valley Road, Suite 500
> Greensboro, NC 27408
> Email: bbossong@maynardnexsen.com

Dated this the 18th day of September 2023.

> /s/Robert B. McNeill
> Robert B McNeill/State Bar No. 13038

4872-0221-6064, v. 1

-23-