IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RE CARROLL MANAGEMENT )
COMPANY, et al., )
 )
                Plaintiffs, )
 )
v. )   1:23-CV-483
 )
DUN & BRADSTREET, INC., et al., )
 )
                Defendants. )

## **ORDER**

The plaintiffs, the Carroll Companies, claim that the defendant Dun & Bradstreet, Inc., published false information about them in its online business directory and that this publication harmed their businesses. The Carroll Companies bring five causes of action: libel *per se*, libel *per quod*, misappropriation of name, unfair and deceptive trade practices, and violations of the North Carolina Racketeer Influenced and Corrupt Organizations Act. Dun & Bradstreet moves to dismiss all five causes of action. The Carroll Companies have not alleged facts sufficient to make any of these claims plausible, and they will be dismissed.

    **I.**    **Overview**

When evaluating a motion to dismiss, a district court assumes the truth of the factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions "must be supported by factual allegations" that amount to more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* at 678–79. The complaint's allegations should allow "the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *id.* at 678).

The Carroll Companies rely on a case saying that courts may only grant a motion to dismiss if there is no doubt "that the plaintiff can prove no set of facts" to support its claim. Doc. 23 at 6 (citing *Faulkner Advert. Assocs., Inc. v. Nissan Motor Corp. in U.S.*, 905 F.2d 769, 771–72 (4th Cir. 1990)). But the Supreme Court has directly disavowed the "no set of facts" standard. *See Twombly*, 550 U.S. at 560–63 (abrogating *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). This Court will apply the controlling *Iqbal-Twombly* framework when evaluating this motion to dismiss.

## II. Defamation Claims: Libel *Per Se* and Libel *Per Quod*

To prove defamation in North Carolina, the "plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) (citing *Griffin v. Holden*, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006)). Libel is defamation in written form. *Id.* A publication that is "obviously defamatory" on its face constitutes libel *per se*. *Id.* A publication that is "not obviously defamatory" but becomes so "when considered with innuendo, colloquium, and explanatory circumstances" is libel *per quod*. *Id.*

Even when a plaintiff has sufficiently alleged a defamation claim under state law, "his claims might still be circumscribed by the First Amendment protections of free speech." *McGlothlin v. Hennelly*, 370 F. Supp. 3d 603, 614 (D.S.C. 2019). The First Amendment requires that statements "be provable as false before there can be liability under state defamation law." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19–20 (1990); *see also Snyder v. Phelps,* 580 F.3d 206, 218 (4th Cir. 2009) ("The First Amendment will fully protect statements that cannot reasonably be interpreted as stating actual facts.") (internal quotation marks omitted). Whether a statement is one of actionable fact is a question of law for the court based on a fact-specific analysis of a "statement's language and context to determine if it could be interpreted as asserting a fact." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998).

In *Biospherics*, the Fourth Circuit upheld a dismissal of a defamation claim against a magazine that published an advice column stating that a company's stock was overvalued. *Id.* at 186. First, the court concluded that the tenor and context of the article favored a conclusion that the statement was opinion because the article adopted a "breezy rather than solemn tone," had an unserious title, "Sweet-Talkin' Guys," and the tip was accompanied by an illustrated arrow pointing out the writer's recommendation to buy or sell the stock. *Id.* at 184. Next, the court reviewed the language used, such as characterizing the plaintiff's statements as "[h]ype and hope for a natural, noncaloric sugar–called Sugaree–that the company's been 'developing' for 15 years." *Id.* This, too, showed the statement was opinion, since "hype and hope" is the type of "irreverent and indefinite language" that negates "the impression that the writer is stating fact." *Id.* at

3

184–85 (internal quotation marks omitted); *see Milkovich*, 497 U.S. at 21 (noting that a statement's "loose, figurative, or hyperbolic language" is indicative that writer is not stating fact). Lastly, the court said that the writer's inclusion of underlying information used to determine the stock valuation and the lack of a challenge to the accuracy of the underlying information meant that "no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." *Biospherics*, 151 F.3d at 185 (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993)).[1]

Here, the Carroll Companies first allege that Dun & Bradstreet made false statements about the Carroll Companies' number of employees and founding date, which are factual matters. Doc. 1 at ¶ 35. But falsely stating the number of employees or founding date is not defamatory, at least not without more. The Carroll Companies also allege that the Dun & Bradstreet report "stated that TCC had revenue of $16.24 million," another factual matter. *Id.* While this arguably might be libel *per quod* in context, the Carroll Companies do not allege that this fact is false; they allege only that that the Carroll Companies' website shows they have "more than $5 billion in real estate assets." *Id.* Revenue and assets are not the same.

---

[1] Some courts have held that subjective business rankings and evaluations are not provable as false and are thus not defamatory. *See Aviation Charter, Inc. v. Aviation Rsch. Grp./U.S.*, 416 F.3d 864, 871 (8th Cir. 2005) (aviation safety rating "is a subjective interpretation of multiple objective data points leading to a subjective conclusion" and is not "a provably false statement of fact" that could constitute defamation); *see also Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007) ("Moody's credit rating is a predictive opinion, dependent on a subjective and discretionary weighing of complex factors" that does not communicate "any provably false factual connection" that could be defamatory).

The remaining challenged statements are not as clearly factual. As to one of the plaintiffs, Dun & Bradstreet made these statements in a June 2022 report:

- -- "Overall Business Risk" – "MODERATE-HIGH"
- -- "D&B Viability Rating" – "High Risk"
- -- "Failure Score" – "MODERATE-HIGH"
- -- "Delinquency Score" – "MODERATE"
- -- "Dun & Bradstreet Thinks . . . Overall assessment of this organization over the next 12 months: STABILITY CONCERNS"
- -- "Based on the predicted risk of business discontinuations: HIGHER-THAN-AVERAGE-RISK-OF-DISCONTINUED-OPERATIONS-OR-BUSINESS-INACTIVITY"
- -- "Based on the predicted risk of severely delinquent payments: MODERATE POTENTIAL FOR SEVERLY DELINQUENT PAYMENTS"

*Id.* at ¶ 37. Dun & Bradstreet made similar statements about other plaintiffs in its reports. *See id.* at ¶¶ 36, 38–41.

The Carroll Companies allege that Dun & Bradstreet "represents" these reports as accurate and based upon verifiable information and documentation when in fact the report statements are "unsupported by facts." *Id.* at ¶¶ 45, 48–49. The Carroll Companies also allege that Dun & Bradstreet "lacks access to the information and documentation that would allow [it] to assess the [Carroll Companies'] overall business risk, viability," etc. *Id.* at ¶ 44.

5

The Carroll Companies attached exemplar reports to the complaint. *See* Doc. 1-1; Doc. 1-2; Doc. 1-3; Doc. 1-4; Doc. 1-5; Doc. 1-6. These reports contain the specific statements that the Carroll Companies allege, and they also provide some underlying information about the Carroll Companies' business performance. For example, the reports include a "trade payments summary" showing the number of days each entity is behind on payments to various creditors and the highest past-due amount in the last 24 months. *See, e.g.*, Doc. 1-2 at 8. Other underlying data categories include: "trade payments by credit extended," "trade payments by industry," "trade lines," "legal events" and "company profile." *See, e.g., id.* at 8–15. In the complaint, the Carroll Companies do not explicitly challenge the accuracy of any of this underlying data.

Dun & Bradstreet introduces some of the report statements with the phrase "Dun & Bradstreet Thinks," *see, e.g., id.* at 3, which signals opinion, [2] and some use the word "assessment," *id.*, or the phrase "D&B Risk Assessment," *id.* at 5, which also suggest opinion. Linking of "D&B" and "rating" also suggest that the "D&B Viability Rating" is Dun & Bradstreet's opinion. *Id.* at 3, 5.

Some of the words show that Dun & Bradstreet made a mathematical calculation; for example, Dun & Bradstreet repeatedly uses the words "score" and "probability" followed by numbers. *See, e.g., id.* at 3, 5–7. But these statements are followed by data, the accuracy of which the Carroll Companies do not dispute except in the three specific

---

[2] Use of the phrases "I think" or "[i]n my opinion" are not enough alone to establish that a statement is an opinion, *see Milkovich*, 497 U.S. at 19, but its use is still a relevant factor in the analysis.

ways discussed *supra*, and all of the reports include a specific statement that Dun & Bradstreet "currently has no financial information on file for this company." Doc. 1-1 at 15; Doc. 1-2 at 15; Doc. 1-3 at 8; Doc. 1-4 at 12; Doc. 1-5 at 9; Doc. 1-6 at 12. Inclusion of underlying information used, explicit mention of unavailable data, and the lack of a challenge to the accuracy of the specific underlying information also tend to show that a reasonable reader would treat these statements as "opinion of the author drawn from the circumstances related." *Biospherics, Inc.*, 151 F.3d at 185.

In context and taken together, viewing tone, language, and accompanying data, a reasonable reader would understand the reports to be Dun & Bradstreet's subjective assessment. *See id*. This makes the reports constitutionally protected statements of opinion and thus not defamatory.

The Carroll Companies contend that the underlying data that Dun & Bradstreet use are false and harmful to their businesses. A statement of opinion based on fully disclosed facts can subject one to a defamation claim if the stated facts are themselves false and demeaning. *See id.* (citing *Standing Comm. on Discipline v. Yagman,* 55 F.3d 1430, 1439 (9th Cir. 1995)). But, as noted, the Carroll Companies do not point to any stated facts that are both false and demeaning.

The Carroll Companies also allege that Dun & Bradstreet "does not disclose in these purported business credit reports that Defendant lacks access to the information and documentation that would allow Defendant to assess Plaintiffs' overall business risk . . ." Doc. 1 at ¶ 44. First, this ignores the fact that each report explicitly says that Dun & Bradstreet "currently has no financial information on file for this company." *See, e.g.*,

7

Doc. 1-2 at 15. Second, the fact that a rating would be different were it based on additional information does not necessarily make the rating "false," it simply makes it an unfounded opinion. This allegation, then, is not about false or inaccurate data in the reports. Rather, it challenges Dun & Bradstreet's evaluation process for forming its business opinion and thus supports the conclusion that the report statements are, in fact, constitutionally protected opinions.

The First Amendment protects Dun & Bradstreet here. The Carroll Companies' libel *per se* claim (claim two), Doc. 1 at ¶¶ 68–84, and libel *per quod* claim (claim three), *id.* at ¶¶ 85–90, will be dismissed.

### III.  Misappropriation of Name[3]

To plead a *prima facie* claim for misappropriation of name or likeness, a plaintiff must allege: (1) an unauthorized use of plaintiff's name or likeness by defendant (2) in connection with an "advertisement or other commercial enterprise." *See Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55, 64 (1938); *see also Renwick v. News & Observer Publ'g. Co.*, 310 N.C. 312, 322, 312 S.E.2d 405, 411 (1984). This cause of action is one type of invasion of privacy claim. *Renwick*, 310 N.C. at 322. The few reported cases in which North Carolina courts have examined misappropriation of name claims all involve natural person plaintiffs.[4] *See, e.g., id.* at 313–14; *Barr v. S. Bell Tel. &*

---

[3] Plaintiffs' complaint labels claim one as "Appropriation of Name." Doc. 1 at 17. The parties refer to the claim in their briefs as "Misappropriation of Name," *see, e.g.*, Doc. 23 at 15, and the Court will do the same.

[4] The parties cite the Second Restatement of Torts, which states, "[a] corporation, partnership or unincorporated association has no personal right of privacy." RESTATEMENT

8

*Tel. Co.*, 13 N.C. App. 388, 388, 185 S.E.2d 714, 715 (1972); *Flake*, 212 N.C. at 780; *Nguyen v. Taylor*, 219 N.C. App. 1, 3, 723 S.E.2d 551, 555 (2012). Here, in contrast, each plaintiff is a corporation or limited liability company. *See* Doc. 1 at ¶¶ 2–7.

The Carroll Companies have not cited, and the Court has not found any North Carolina cases to support the proposition that this cause of action can be brought by a corporate entity. The claim for misappropriation of name (claim one), *id.* at ¶¶ 61–67, will be dismissed.

IV.  **Unfair and Deceptive Trade Practices Act**

To prove an unfair or deceptive trade practice claim under North Carolina's UDTPA, "a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice (2) that was in or affecting commerce and (3) proximately caused injury." *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 666–67 (M.D.N.C. 2013). "An act or practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and is deceptive if it has the capacity or tendency to deceive." *Id.* at 667 (internal quotation marks omitted). Both consumers and businesses may bring claims under the UDTPA. *United Lab'ys., Inc. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988). A plaintiff may not use the UDTPA or other "non-reputational tort claims" to recover defamation-type damages "without satisfying the stricter (First

---

(SECOND) OF TORTS § 652I (1977) cmt. c. The North Carolina Supreme Court has said that "[e]xcept as specifically adopted in this jurisdiction, the Restatement should not be viewed as determinative of North Carolina law." *Hedrick v. Rains*, 344 N.C. 729, 729, 477 S.E.2d 171, 172 (1996). In the absence of case law showing that North Carolina courts have adopted the Restatement's position on misappropriation, this Court declines to consider it.

9

Amendment) standards of a defamation claim." *Food Lion, Inc. v. Cap. Cities/ABC, Inc.*, 194 F.3d 505, 522 (4th Cir. 1999); *see also Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (holding plaintiff cannot recover damages for intentional infliction of emotional distress claim for publication of opinion protected by the First Amendment).

Here the Carroll Companies allege that Dun & Bradstreet's business reports are based on incomplete information that makes them misleading and false, *see, e.g.*, Doc. 1 at ¶¶ 48–49, 58, 73, 83, 103, and that "businesses, financial institutions, and the general public" rely on these reports to make business decisions. *Id.* at ¶¶ 47, 92, 97. The Carroll Companies also allege that when they asked Dun & Bradstreet to correct the reports, Dun & Bradstreet refused unless the Carroll Companies bought one of its products. *Id.* at ¶ 93. The Carroll Companies say these actions injured their brand. *Id.* at ¶ 98.

This Court has already determined that the First Amendment protects Dun & Bradstreet from the Carroll Companies' defamation claim. *See supra.* The Carroll Companies cannot "end-run around First Amendment strictures" by seeking relief for the same alleged damages to their reputation that they cannot obtain through their defamation claim. *Food Lion*, 194 F.3d at 522. The Carroll Companies allege only reputational harm throughout the complaint, *see, e.g.*, Doc. 1 at ¶¶ 51, 56–57, 90, including in the section on its UDTPA claim, *id.* at ¶ 98, so recovery under the UDTPA is foreclosed by the First Amendment. The UDTPA claim (claim four), *id.* at ¶¶ 91–99, will be dismissed.

V. **Racketeer Influenced and Corrupt Organizations Act**

Dun & Bradstreet moves to dismiss the Carroll Companies' North Carolina RICO claim, contending that the statute may "only be applied to prohibit patterns of

racketeering activity," defined as "at least two instances of racketeering activity" that would be chargeable as a crime under North Carolina law. Doc. 19 at 15; N.C. Gen. Stat. § 75D-3(b). Here, the complaint does not contain any allegations of criminal conduct or a pattern of racketeering activity. The Carroll Companies have not defended this claim and agree it can be dismissed. Doc. 23 at 2 n.2.

## VI. Injunctions

This leaves the Carroll Companies' claims for injunctive relief, *id.* at ¶¶ 111–20, which Dun & Bradstreet also moves to dismiss. Doc. 18 at 2. A request for injunctive relief is not a cause of action but rather a remedy. As there are no remaining substantive claims, the requests for injunctive relief are moot.

## VII. Conclusion

As the complaint fails to state a claim on which relief may be granted, it will be dismissed. The claims against other defendants were previously dismissed for lack of personal jurisdiction. *See* Doc. 32. Judgment will therefore be entered dismissing the case in its entirety.

It is **ORDERED** that:

1. The defendant's motion to dismiss, Doc. 18, is **GRANTED**, and the complaint as to Dun & Bradstreet, Inc. will be **DISMISSED** with prejudice.

2. Judgment will be entered separately as time permits.

This the 12th day of December, 2023.

_____
UNITED STATES DISTRICT JUDGE